IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERARD J. MILLER, | ) | |
|     Plaintiff | ) | C.A. No. 16-256 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| ERIE COUNTY OFFICE OF | ) | |
| CHILDREN AND YOUTH, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

### I. INTRODUCTION

#### A. Relevant Procedural History

On October 25, 2016, Plaintiff Gerard J. Miller filed a complaint against Defendant Erie County Office of Children and Youth ("OCY"), asserting claims of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 794(a)(2), as well as a claim of retaliation under the ADA, 42 U.S.C. § 12203(a). Plaintiff subsequently filed an amended complaint [ECF No. 33], adding a claim of disability discrimination under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* As relief for his claims, Plaintiff seeks declaratory and injunctive relief, lost wages and benefits, reinstatement of employment, and attorneys' fees and costs.

Defendant filed an answer to Plaintiff's amended complaint on June 20, 2017 [ECF No. 39], and the parties have since completed discovery. Presently pending before the Court is

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF No. 10, 12].

1

Defendant's motion for summary judgment [ECF No. 41], in which Defendant contends that (i) Plaintiff cannot meet his burden of proving a *prima facie* case of disability discrimination because his disability prevents him from driving a vehicle, which, Defendant argues, is an essential function of his job as a caseworker; and, (ii) Plaintiff cannot meet his burden of proving a *prima facie* case of retaliation under the ADA because he cannot establish a causal connection between the alleged protected activity and the adverse employment action at issue. Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 47], arguing that (i) driving a vehicle is not an essential function of the caseworker job and, thus, Defendant is required to provide an accommodation for his disability; and (ii) a causal connection exists between his request for accommodation and Defendant's adverse employment action because the adverse action occurred at Defendant's first actual opportunity to retaliate. This matter is now ripe for consideration.

### B. Relevant Factual History[2]

At all times relevant hereto, Plaintiff was employed as a caseworker with OCY since approximately July 20, 2009. (ECF No. 43, Defendant's Concise Statement of Material Facts, at ¶ 1). As a caseworker, Plaintiff supervised the home environment and well-being of at-risk children in the community to make sure they were provided with proper social services. (Id. at ¶ 2). In particular, Plaintiff's job description included the following duties and responsibilities:

1. Interaction with family members and community professionals;
2. Assessing the well-being of children through direct contact;

---

[2] The factual history set forth herein is primarily derived from Defendant's concise statement of material facts [ECF No. 43], to the extent such facts are undisputed by Plaintiff in his response [ECF No. 48] and/or are fully supported by the record evidence. In addition, to the extent the Court has deemed necessary or appropriate, the factual history has been supplemented by Plaintiff's statement of material facts [ECF No. 49], which has not been opposed by Defendant.

3. Transporting children to medical, mental health and other appointments if foster/kinship/parents or county social service aides were unable to do so;

4. Intervening when environmental, parent-child or family crisis suggested possible harm to the child;

5. Monitoring a child's out-of-home placements by meeting with the child and caretaker at least monthly;

6. Arranging visitation to occur on a regular basis (minimum every other week unless otherwise ordered by Court) between parent and child to facilitate child's return home;

7. Arranging for sibling visitation to occur a minimum of every other week unless otherwise order by the court.

(Id. at ¶ 5).

In or around 1993, Plaintiff was diagnosed with focal epilepsy, which causes seizures that Plaintiff describes as an "aura" that creates confusion and a brief loss of awareness as to circumstances and surroundings. (Id. at ¶¶ 18-19). Such seizures led to the suspension of his Pennsylvania driver's license for a period of six months on two separate occasions, in 1994 and 1999. (Id. at ¶¶ 17, 19).

On October 28, 2014, Plaintiff experienced a seizure while meeting with his supervisor, Mary Jo Cline ("Cline"), and his union representative in Cline's office. (ECF No. 49, Plaintiff's Statement of Material Facts, at ¶ 1). Later the same day, Plaintiff experienced another seizure in front of a supervisor and a nurse while visiting a client. (Id.). At no time before October 28, 2014, did Plaintiff inform any of his supervisors that he had a history of seizures or seizure-related symptoms. (ECF No. 43, at ¶ 52). As a result of these episodes, Defendant suspended Plaintiff without pay on October 30, 2014, informing him that he would be precluded from returning to work until he obtained written certifications from both a medical doctor and a licensed psychologist that he was "fit for duty." (ECF No. 49, at ¶ 2). The next day, Plaintiff saw

his physician, Dr. John Jageman, who provided a note advising that Plaintiff would be unable to return to work through November 11, 2014, but failed to provide a diagnosis of Plaintiff's condition. (ECF No. 43, at ¶ 53). As a result, Cline wrote to Dr. Jageman requesting clarification as to Plaintiff's work status and limitations, to which Dr. Jageman responded that Plaintiff's return to work was "unknown." (Id. at ¶¶ 54-55).

On January 8, 2015, Plaintiff met with OCY's director, Lana Rees ("Rees"), and submitted a letter dated December 1, 2014, from Dr. Norman So, a neurologist at the Cleveland Clinic who had been treating Plaintiff's seizure disorder. (Id. at ¶ 58). In the letter, Dr. So reported that Plaintiff suffered from "focal epilepsy, with aura (warning sensations)" and was, thus, unable to drive, but was "capable of performing all other case management duties." (Id.; ECF No. 50-2). At or around the time Plaintiff submitted Dr. So's letter to Rees, Plaintiff requested, as an accommodation for his seizure disorder, that Defendant permit him to return to work and either allow him to use alternative means of transportation, such as a taxi or public transportation, to visit clients, or provide transportation by a supervisor or co-worker to attend meetings outside the office. (Id. at ¶¶ 65, 67; ECF No. 49, at ¶ 8). Defendant refused, informing Plaintiff that he needed to be able to drive to perform the job duties of a full-time caseworker. (ECF No. 43, at ¶ 64; ECF No. 49, at ¶ 9). Thus, Plaintiff was encouraged to seek other positions within Erie County that did not require driving. (ECF No. 43, at ¶ 74).

On or about March 10, 2015, Rees and others met with Plaintiff about his status and fashioned a plan for allowing Plaintiff to return to temporary light duty work performing non-casework, administrative duties in anticipation of the possibility that Plaintiff would regain his driving status after an upcoming doctor's appointment. (Id. at ¶ 76). Accordingly, on April 27, 2015, Plaintiff returned to work in a temporary light duty position for a period of 90 days,

4

pending the outcome of Plaintiff's doctor visit; however, on May 22, 2015, Plaintiff's no-driving restriction was re-affirmed by Dr. Jageman. (Id. at ¶¶ 78, 79).[3] Thus, after the 90 period for the temporary light duty position expired, Plaintiff was placed on an unpaid medical leave of absence, which continued until late May 2017, when Plaintiff was ultimately discharged by Defendant. (Id. at ¶ 81).[4]

### C. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli

---

[3] In fact, since December 1, 2014, Dr. So and Plaintiff's other doctors have continued to impose a no-driving restriction. (ECF No. 43, at ¶ 60).

[4] According to Rees, Defendant was able to terminate Plaintiff's employment after two years of unpaid medical leave, pursuant to its Collective Bargaining Agreement. (ECF No. 50-1, Rees deposition transcript, at pp. 44-45 (internal pp 92-93)).

5

v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477

U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

## II. DISCUSSION

### A. Disability Discrimination Claims[5]

"Under the ADA, employers are prohibited from discriminating 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Taylor v. Phoenixville School Dist., 184 F.3d 296, 305 (3d Cir. 1999), citing 42 U.S.C. § 12112(a).

To establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must demonstrate that: (i) he is "disabled" as defined by the ADA; (ii) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (iii) he has suffered an adverse employment decision as a result of discrimination. Gaul v. Lucent

---

[5] The claims of disability discrimination under the ADA, PHRA and Rehabilitation Act all assert that Miller was qualified to perform the essential functions of his job, Defendant failed to reasonably accommodate his disability, and that he was discharged as a result. Since the various statues overlap with regard to these issues, this opinion will collectively address the various claims under the ADA framework. See Bragdon v. Abbott, 524 U.S. 624, 632 (l998) (ADA construed to be consistent with regulations issued to implement the Rehabilitation Act); Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) ("the analysis of an ADA claim applies equally to a PHRA claim").

Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998), citing Shiring v Runyon, 90 F.3d 827, 831 (3d Cir. 1996). If the plaintiff presents evidence establishing a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the action. Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998). The defendant satisfies this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the employer is able to fulfill this requirement, it is then Plaintiff's burden to prove that the legitimate reasons offered by the employer were not its true reasons, but, rather, were pretext for unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344 (3d Cir. 1999).

Here, Defendant contends that Plaintiff's disability discrimination claims are fatally deficient for three reasons: (1) Plaintiff has failed to meet his burden of proving the second element of his *prima facie* case, because driving a vehicle is an essential function of the job of caseworker which Plaintiff is disqualified from performing; (2) the accommodations proposed by Plaintiff are unreasonable as a matter of law; and (3) Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Each of these arguments will be considered in turn.

### 1.     Driving is an Essential Function of the Job of Caseworker

Under the ADA, "essential functions" are those considered fundamental and not marginal to the job. Skerski v. Time Warner Cable Co., 257 F.3d 273, 279 (3d Cir.2001), quoting 29 C.F.R. § l630.2(n)(2); Grosso v. UPMC, 857 F.Supp.2d 517, 534 (WD. Pa. 2012). Thus, "a distinction must be made between the *requirements* of a given position and the *essential functions* of that position." Johnson v. McGraw-Hill Companies, 451 F.Supp.2d 681, 704

(W.D.Pa. 2006), citing Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 329 (3d Cir. 2003) (emphasis in original).

"[W]hether a particular function is essential is a factual determination that must be made on a case by case basis based upon *all* relevant evidence." Turner v. Hershey Chocolate USA, 440 F.3d 604, 612 (3d Cir. 2006) (brackets and internal quotation marks omitted; emphasis in original). "Evidence of whether a particular function is essential might include, but is not limited to: (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." Id., 440 F.3d at 612; 29 C.F.R. § 1630.2(n)(3).

Here, Defendant asserts that driving a vehicle is an essential function of the job of caseworker, because a caseworker is required to "personally observe and interact with the child in their home environment, transport them to medical or mental health appointments as needed, intervene when the family situation suggests possible harm to the child, take them to court or other meetings, and regularly visit them." (ECF No. 42, Defendant's Brief, at p. 5). In support of this claim, Defendant has submitted, *inter alia*, the Affidavit of Mary Jo Cline, Administrator of ongoing clinical services at OCY, who declares, in pertinent part, as follows:

> 3. … In my years with the agency we have not employed a caseworker who was unable to drive for any extended period of time, as the ability to drive is essential to performing the job."
>
> \*            \*            \*
>
> 5. When hiring caseworkers into the Office of Children and Youth, we make it clear that they must have a reliable vehicle that is insured and inspected,

9

> and that the vehicle is available at all times for the caseworker to drive in the community….
>
> \*         \*         \*
>
> 7. Driving is an activity that caseworkers perform nearly every day of the week, depending on their schedules and demands of their cases. The caseworkers have to be ready at any time to respond to crisis or emergencies that develop outside of their schedules, and have the ability to drive to wherever they are needed to respond.

(ECF No. 44-12, Affidavit of Mary Jo Cline, at ¶¶ 3, 5, 7).

Nonetheless, the Third Circuit Court has observed that the "essential function requirement focuses on the desired result rather than the means of accomplishing it." Skerski, 257 F.3d at 280-81. In Skerski, the plaintiff was a cable installer and technician whose job included climbing poles, as well as non-climbing work. Id. at 275-76. When the plaintiff developed an anxiety disorder that prevented him from climbing, he was initially provided an accommodation, but was ultimately terminated based on the employer's belief that he was unable to perform an essential function of his job. In analyzing whether climbing was an essential function of the plaintiff's job, the Third Circuit court observed that climbing was not listed as an essential function in the plaintiff's job description, and that such omission supported the idea that "one could view climbing as a useful skill or method to perform the essential functions of the job but that it is not itself an essential function of the installer technician position." Id. at 280. See also Johnson v. McGraw-Hill Companies, 451 F.Supp.2d 68 (W.D.Pa. 2006) (concluding that there was a genuine issue of material fact as to whether driving within an assigned territory, among other things, was an essential function of performing the job of sales representative); Keith v. County of Oakland, 703 F.3d 918 (6th Cir. 2013) (finding that reasonable minds could differ as to whether the ability to hear is an essential function of a lifeguard position that requires the ability to communicate).

Here, as in Skerski, maintaining a valid driver's license and driving one's own vehicle is not specified in the written job description as one of the duties and responsibilities of a caseworker. (ECF No. 44-5, Rees deposition transcript, at p. 32 (internal p. 34); ECF No. 44-4, Job Description). In fact, during her deposition, Rees repeatedly acknowledged that driving is merely the means to an end, or, put another way, the means to accomplish the duties of the job.[6] (ECF No. 50-1, at pp. 29 and 31 (internal pp. 22 and 31-32)). In particular, Rees testified that "being able to perform [the] job duties and responsibilities [of a caseworker] requires being – having access to the community through driving" and, "[t]he job duties and responsibilities cannot be performed without [a driver's license]." (ECF No. 50-1, Rees deposition transcript, at pp. 31-32 (internal pp. 32 and 34)). Moreover, while acknowledging that the job description "does not specifically require" a driver's license, Rees testified that her "concern would be that [the caseworker] would be unable to perform the necessary functions of all of their – their job duties and responsibilities" without one. (Id. at pp. 32-33 (internal pp. 34 and 38)).

Thus, there remains a genuine issue of material fact as to whether driving was an essential function of the caseworker job, or merely a means of accomplishing the essential functions of the job. See Skerski, 257 F.3d at 280. As a result, the Court is unable to conclude as a matter of law that Plaintiff has failed to meet his burden of proving the second element of his *prima facie* case of disability discrimination.

### 2. **Reasonable Accommodation**

In the event Plaintiff is able to establish that driving is not an essential function of his former job as caseworker,[7] the question then becomes whether a reasonable accommodation for

---

[6] In actuality, Rees twice used an erroneous turn of phrase by testifying that "driving is the ends to a means;" however, her intent was clear.

11

his inability to drive would allow him to do the essential functions of his job without causing the employer undue hardship. 42 U.S.C. §§ 12111(8); 12112(b)(5)(A). Here, Plaintiff proposed that Defendant either supply him with a driver or allow him to take a taxi or public transportation to appointments outside of the office. Defendant argues that the accommodations Plaintiff proposed for his disability are unreasonable as a matter of law.

In particular, Defendant asserts, *inter alia*, that "To accommodate the Plaintiff's request for a driver by having a supervisor or other co-worker perform that function is not reasonable," because "[supervisors] or other caseworkers … do not have the opportunity to drive another caseworker to appointments, meetings or emergencies with clients of the agency." (ECF No. 42, Defendant's Brief, at p. 8). However, this argument ignores the fact that, from approximately March 2014 to October 2014, Plaintiff was actually accompanied by a supervisor on all of his out-of-office appointments. (ECF No. 50-1, Plaintiff deposition transcript, at p. 10 (internal p. 110); Rees deposition transcript, at p. 37, (internal pp. 54-55)). Although Defendant attempts to explain away this fact by noting that the "situation resulted from serious performance deficiencies that required the supervisor to monitor [Plaintiff's] work" (ECF No. 42, Defendant's Brief, at p. 7), the fact remains that Plaintiff's supervisor was able to accompany Plaintiff on all of his appointments for a period of, at least, seven months. This fact undermines Defendant's argument that it would be unreasonable for a supervisor or other caseworker to drive Plaintiff to his out-of-office appointments because they would "not have the opportunity" to do so. At the very least, a genuine issue of material fact exists as to whether Defendant could provide such an accommodation without incurring undue hardship. Thus, summary judgment is not available on

---

7
It is well established that "employers are not required to modify the essential functions of a job in order to accommodate an employee." Donahue v. Consolidated Rail Co., 224 F.3d 226, 232 (3d Cir. 2000).

the issue of reasonable accommodations.[8]

### 3. Legitimate, Nondiscriminatory Reason

Defendant next argues that, even if Plaintiff can establish a *prima facie* case of disability discrimination, Plaintiff's employment "was separated for a legitimate, business reason – namely, because he was unable to perform the essential function of driving after a two year leave of absence." (ECF No. 42, Defendant's Brief, at p. 13). In fact, during her deposition, Rees made clear that Plaintiff's inability to drive is the only reason he was not returned to his job as a caseworker. (ECF No. 50-1, Rees deposition transcript, at p. 44 (internal pp. 91-92)). The legitimacy of this reason for Plaintiff's termination, however, is necessarily dependent upon a finding that driving was an essential function of Plaintiff's job or, if not, that a reasonable accommodation for Plaintiff's inability to drive could not be provided without Defendant experiencing undue hardship. As has already been discussed, neither of these issues can be resolved as a matter of law. If it is ultimately found that driving was not an essential function of Plaintiff's job and Defendant failed to provide a reasonable accommodation, Defendant's proffered reason for Plaintiff's termination would then become discriminatory, rather than nondiscriminatory.[9] Thus, Defendant's motion for summary judgment as to Plaintiff's disability discrimination claims will be denied.

### B. ADA Retaliation

Plaintiff contends that he was terminated from his employment in retaliation for requesting a reasonable accommodation for his inability to drive due to his seizure disorder.

---

[8] As a result, there is no need to assess the viability of Plaintiff's second accommodation proposal.

[9] Because there is a genuine issue of material fact as to whether Plaintiff was terminated for a legitimate, nondiscriminatory reason, Plaintiff does not need to prove pretext at this stage of the proceeding.

13

To establish a *prima facie* case of retaliation under the ADA (and PHRA), a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997) (citations omitted). If an employee establishes a *prima facie* case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. Id. If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. Id.

Defendant argues that it is entitled to summary judgment on this claim because "Plaintiff has failed to present any evidence establishing any causal connection between the purported protected activity (i.e., an alleged request for a reasonable accommodation) and Defendant's decision to terminate his employment. (ECF No. 42, Defendant's brief, at p. 16). Specifically, Defendant points out that Plaintiff "continued to remain employed until April 2017," more than two years after he claims to have requested an accommodation in January 2015 (Id.).[10]

However, Plaintiff correctly notes that, while it is technically true he remained "employed" until April 2017, he was actually retained on an unpaid medical leave of absence for the majority of this time period, and was not permitted to return to his job because of his inability to drive. This, in itself, may be regarded as an adverse action that began well before Plaintiff was

---

[10] Alternatively, Defendant argues that, even if Plaintiff could establish a *prima facie* case of retaliation, "the facts of record clearly show that Plaintiff's employment was terminated after he was unable to perform an essential function of his position after a two year leave of absence" (ECF No. 42, Defendant's brief, at p. 16); however, since there remains a genuine issue of material fact as to whether driving was an essential function of Plaintiff's job, the legitimacy of Defendant's reason for Plaintiff's termination is still at issue.

14

actually terminated. See, e.g., Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53, 71-73 (2006) (holding that the factual determination of whether a 37-day suspension without pay was an adverse employment action was an issue for the jury to decide); Snyder v. Norfolk Southern, 463 F.Supp.2d 528, 534 (E.D.Pa. 2006) (court assuming that medical disqualification is an adverse action). Thus, reasonable minds could differ as to whether placing Plaintiff on unpaid medical leave was a materially adverse action having a sufficient causal connection to Plaintiff's request for a reasonable accommodation so as to satisfy the third prong of Plaintiff's *prima facie* case of retaliation. As a result, Defendant's motion for summary judgment regarding Plaintiff's retaliation claim will be denied.

  An appropriate Order will follow.


        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        United States Magistrate Judge

Dated: July 10, 2018